May 6, 1809.
Bkevakd, J.,
declared the opinion of the court, after stating the case, and the points discussed in the argument. It was alleged, by the defendant’s counsel in'the course of his argu. ment, that the defendant is not justly chargeable with misrepresentation, or concealment in any thing material respecting the contract; and that he has always been able, and willing, to execute the same on his part. If this were indeed so, the plaintiff cannot be entitled to reeover.in this action, or in any other. But this argument turns on the assumption of facts, which were not proved. The plaintiff offered evidence to prove the contrary, which the court would not admit. The question is, whether this evidence was relevant to the case ? If it was so, it ought to have been admitted. If otherwise, it was properly rejected. We are of opinion the evidence ought to have- been received. The intention of the parties, to be collected from their written agreement, appears to have been, that the contract should be execu-tory and conditional, until finally executed in all its parts; and that the property to be transferred and exchanged, should not be transferred, or exchanged, completely, and absolutely, but upon condition that the whole contract should be fully executed, according to the true intent and proper construction of it. The whole scope of *328 writing evinces this intention, as well as that particular part of which was intended to secure the negroes in question from th© cla™s of the defendant’s creditors. Equal caution seems to have k®en exerciseti by both parties. The defendant, on his side, takes care to insert a stipulation, that his deed of conveyance of the tenements to be transferred to the plaintiff, shall not be delivered to him until the covenants on his part shall be fulfilled. The deed is to be delivered to Mr. Purvis as an escrow. Is it credible, that the plaintiff did not intend an equivalent security on his part ? It is true the negroes are delivered into the defendant’s possession ; but this makes no difference, if the intent of such delivery was not to pass the property absolutely. It was a delivery pursuant to the terms of the written agreement; and the intention of the act is to be sought in that instrument, and ought not to be deduced from the mere circumstance of delivery. If then, it be admitted, that until the contract should be fully executed, no property should vest by this written executory contract, ■ or be transferred absolutely from' either of the contracting parlies to the other, it must follow that the defendant had not an unqualified right to detain, or hold the negroes-in question, as his absolute property. It remains to examine the-question, whether he could retain, after a demand, upon the ground of a lien, or qualified right, founded on the executory contract? There is no doubt, that if he was able and willing to perform his part of the contract, and there was no fault on his side to vitiate the contract, or render it void, or voidable, by the plaintiff, that he would be entitled to keep possession of the negroes; for his doing so would be in conformity with the true spirit and meaning of the contract; and he might claim in a Court of Equity a specific execution of the agreement. But if, on the- contrary, ho was unable to perform the covenants which were to be performed by him, or would not execute the contract on his part, it would seem hard and unjust to say, that the plaintiff should nevertheless be bound to perform the part of the contract by him undertaken to be performed. It would seem equally unjust and unreasonable to say, that because the party who is in fault, and will not perform his part of the contract, has obtained money or goods from the other party, who is not in fault, upon the faith of the contract, and in expectation of its perfect execution, should be entitled to retain the same ; or that he should not be liable to restore any chattels, or the value of them, which he shall unrighteously withhold from the true owner of them, although he may have obtained possession of them fairly, under & contract by which he might have obtained an absolute and indefea* *329 Bible right to bold them against all the world. The plaintiff, at the trial, suggested, and offered to prove, that the defendant, either through design, or from ignorance, or mistake, had entered into covenants which he was unable to comply, with. If this had been ,. ini ii i . . /i proven, it would have appeared that the main object of the contract, as respected the plaintiff, was frustrated. That lie could not, from the fault of the defendant, whether his motives were fraudulent or not, makes no difference, derive the advantage from the contract W'hich,\vas expected and intended; and, therefore, that he had an unquestionable right to claim a rescisión of it in loto. If he had a legal claim to rescind the contract on this ground, he had a right to demand the negroes in question ; for the party in possession could justify his detention only upon the foot of the contract, and by insisting on a full execution of it. But unless he could show that he was able to execute the contract on his part, he certainly would not be entitled equitably, or legally, or upon any right principle, to hold the property under the contract, - against the claim of the rightful owner. Then if, under these circumstances, a man may reclaim the possession of chattels, as his absolute and rightful property, it cannot be disputed that trover is the most proper action, to obtain redress, where the thing in dispute is unjustly and unlawfully detained. In this case, it appears the negroes in dispute were demanded. This was evidence to show the intention of the 'plaintiff to disaffirm the contract, and reclaim his negroes. It was also evidence, coupled with the refusal of the defendant to give up the negroes, of an unlawful conversion. The right of the plaintiff to recover in this action, depended on evidence which the court refused to admit. We are of opinion the evidence should have been received, and that the right of property should have been determin* ed by the jury, upon a due consideration of the facts disclosed in evidence, and upon the sound principles of law applicable to the case.
In support of the doctriue here laid down, the following authorities are referred to. 2 Pow. on Contr. 196,203,412,406. 2 Ventr. £78. 5 Vin. Abr. 510. 4 Bosanq. and Pul. 144. 4 Dallas, 250. Pothier on Obligations, 14, 260. 2 Esp. Rep. 639. 1 Cain’s, .47. 1 Dali. 428. 2 D. and E. 100.
It has been contended, that covenant will lie in a case like this, tand hence the conclusion has been drawn, that trover will not lie. But this conclusion is not warranted by the premises. In many cases, a man has a choice of remedies. He may have an action Km the case, or trover. 2 Bl. Rep.. 1112. Debt or case, 4 Co» *330 or covenant, Cro. Eliz. 797. Trover or trespass, ib‘ 824>
Nonsuit set aside, and new trial granted.